UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

LEROY T. JACKSON
and
ADELAIDE JACKSON,

        Plaintiffs,

v.                                Civil Action No. 3:15cv238

OCWEN LOAN SERVICING, LLC, *et al.*,

        Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on the Motion to Dismiss pursuant to Federal Rule of

Civil Procedure 12(b)(6)[1] filed by Defendants Ocwen Loan Servicing, LLC ("Ocwen") and

Deutsche Bank National Trust Company ("Deutsche Bank") (ECF No. 11), the Motion to

Dismiss filed by Poore Substitute Trustee, Ltd. ("Poore") (ECF No. 13), and the Motion to

Remand filed by Plaintiffs Leroy Jackson and Adelaide Jackson (collectively, the "Jacksons")

(ECF No. 18). The motions have been fully briefed, and the matters are ripe for disposition. The

Court exercises jurisdiction pursuant to 28 U.S.C. § 1332.[2] The Court dispenses with oral

---

[1] Federal Rule of Civil Procedure 12(b)(6) allows dismissal for "failure to state a claim
upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

[2] Section 1332 confers subject matter jurisdiction when the parties are diverse and the
amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). For purposes of diversity
jurisdiction, the Jacksons are citizens of Virginia; Deutsche Bank is a citizen of California;
Ocwen is a citizen of Delaware and Florida; and, Poore is a citizen of Virginia. The Notice of
Removal notes that the Complaint sought damages in the amount of $125,000. The Amended
Complaint seeks an unspecified amount of "compensatory damages." (Am. Compl. 14, ECF
No. 12.)
    No party has disputed diversity jurisdiction based on the amount in controversy. "If the
plaintiff's complaint, filed in state court, demands monetary relief of a stated sum, that sum, if
asserted in good faith, is 'deemed to be the amount in controversy.'" *Dart Cherokee Basin*

argument because the materials before the Court adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will grant the Motions to Dismiss (ECF Nos. 11, 13) and deny the Motion to Remand (ECF No. 18).

## I. Standard of Review

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550

---

*Operating Co., LLC v. Owens*, 135 S. Ct. 547, 551 (2014) (quoting 28 U.S.C. § 1446(c)(2)). "When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so." *Id.* (citing 28 U.S.C. § 1446(c)(2)(A)).

In the Jacksons' Motion to Remand, they argue that because both they and Defendant Poore are considered citizens of Virginia for purposes of subject matter jurisdiction, no diversity of citizenship exists. As the Court will address, Poore has been fraudulently joined. (*See infra* Part III.) Thus, the Court will disregard its citizenship for purposes of diversity.

U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must assert facts that rise above speculation and conceivability to those that "show" a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 570; Fed. R. Civ. P. 8(a)(2)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citations omitted).

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). However, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (citing *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *Gasner v. Cty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995)).

The Jacksons attach a December 23, 2003 note (the "Note") and a December 23, 2003 deed of trust (the "Deed of Trust") to their Amended Complaint. (ECF Nos. 8-1, 8-2.) Ocwen and Deutsche Bank attach the Deed of Trust, the Note, and a February 13, 2014 Notice of Sale (the "Notice of Sale") to their Memorandum in Support of the Motion to Dismiss. (ECF Nos. 12-1 to 12-3.) No party contests the authenticity of these documents, and the Jacksons refer to them in the Amended Complaint. Deeming them central to the claims, the Court will consider these documents. *See Witthohn*, 164 F. App'x at 396–97 (citations omitted).

## II. Procedural and Factual Background

### A.      Summary of Allegations in the Amended Complaint[3]

The Jacksons own a home at 2847 Midland Road, Petersburg, Virginia 23805 (the "Property"). On December 23, 2003, the Jacksons entered into a mortgage loan with New Century Mortgage Corporation ("New Century") to purchase the Property. The Note, dated the same day, evinced the loan. The Deed of Trust, also dated December 23, 2003, secured the Note and appointed Steven C. Conte as trustee. New Century assigned the Note, and Deutsche Bank now claims ownership over the Note. After assuming ownership, Deutsche Bank appointed Poore as substitute trustee and engaged Litton Loan Services ("Litton"), and later Ocwen, as servicers of the loan.

The Jacksons contend that they paid the full monthly loan payments in June 2013 and July 2013. In August 2013, the Jacksons sent Litton a cashier's check for the monthly payment that they assert was the full, appropriate amount of $1,303.97. The Jacksons state that Ocwen improperly told them that the payment was insufficient to "bring the loan current" and returned

---

[3] For purposes of this motion, the Court assumes the well-pleaded factual allegations in the Amended Complaint to be true and views them in the light most favorable to the Jacksons. *See Matkari*, 7 F.3d at 1134.

the payment. (Am. Compl. ¶ 15.) As a precaution, the Jacksons put the payment into a bank account to avoid spending the money. In September 2013, the Jacksons again sent a full monthly payment. However, Ocwen applied the September 2013 payment to the June 2013 payment. The next month, Ocwen applied the Jacksons' October 2013 payment to the July 2013 payment. This process continued until February 2014, with each payment applied to the payment due three months prior.

The Jacksons contend that on February 13 and 20, 2014, Poore advertised a trustee's sale of the Property in the Richmond Times Dispatch newspaper via the Notice of Sale. The Notice of Sale stated, in pertinent part:

> **TRUSTEE'S SALE OF**
> **2847 MIDLAND RD. PETERSBURG, VIRGINIA 23805**
> In execution of a Deed of Trust in the original principal amount of $126,000.00 from LEROY T. JACKSON AND ADELAIDE W. JACKSON dated December 23, 2003, recorded among the land records of the Circuit Court for PETERSBURG CITY as Instrument No. 03-005804 recorded December 31, 2013, the undersigned appointed Substitute Trustee[, Poore,] will offer for sale at public auction on the courthouse steps at the front of the Circuit Court building for PETERSBURG CITY located [at] 7 COURTHOUSE AVENUE, PETERSBURG, VA 23802 on February 21, 2014 at 9:30 a.m. . . . .

(Am. Compl. ¶¶ 25, 33; Mem. Supp. Mot. Dismiss Ex. 3 ("Notice of Sale"), ECF No. 5-3.) The Jacksons allege that the Notice of Sale defamed them "by announcing . . . that the Jacksons were sufficiently in arrears on the [mortgage] loan . . . and that the lender . . . was entitled to foreclosure" of the Property. (Am. Compl. ¶ 26.) The Notice of Sale did not report that the Jacksons were in default on the loan, only that a trustee's sale had been scheduled for the Property.

On an unspecified date, Poore sent the Jacksons a notice that it had scheduled a foreclosure of the Property for February 21, 2014. The Jacksons maintain that the scheduled foreclosure was improper because (1) they were current on their payments and (2) even if they

were in arrears, Deutsche Bank did not send a 30-day cure notice as required by the Note and Deed of Trust.

After receiving the correspondence from Poore regarding the scheduled foreclosure, Adelaide Jackson and the Jacksons' daughter, Crystal L. J. Wynn, called Ocwen. They spoke with an Ocwen representative, who told Jackson and Wynn that the Jacksons would have to pay $13,039.70—ten times the normal monthly amount—before February 21, 2014 to prevent the foreclosure and $6,183.17 thereafter to bring the loan current. On February 20, 2014, the Jacksons paid the $13,039.70 "under duress" to prevent the foreclosure. (Am. Compl. ¶ 47.) On March 5, 2014, "[a]t the demand of Deutsche [Bank], through Ocwen," the Jacksons paid the additional $6,183.17 to prevent the scheduling of any additional foreclosures. (Am. Compl. ¶ 49.) The February 21, 2014 foreclosure did not occur, and the Jacksons still own the Property. The Jacksons contend that the only amount they could have owed was $1,303.97, the amount of the returned August 2013 payment. Thus, $17,918.90 of the amount paid constituted an overpayment.[4] The Jacksons now seek this amount, plus interest, in damages, as well as a declaratory judgment that the Jacksons are current on the loan.

Since the near-foreclosure and subsequent payments, the Jacksons allege that Deutsche Bank has reported to credit bureaus that the Jacksons were more than 30 days in arrears on the Note and faced foreclosure, despite the Jacksons' continued allegations that they were and are current on the Note. As a result, the Jacksons' credit scores have declined. The Jacksons' original complaint sought $125,000 in relief, but their Amended Complaint seeks an unspecified amount of compensatory damages for this decline.

---

[4] $13,039.70 + $6,183.17 − $1,303.97 = $17,918.90.

**B.      Procedural History**

On February 18, 2015, the Jacksons filed their Complaint in the Circuit Court of the City

of Petersburg, Virginia, alleging defamation, overcharges, and breach of contract against

Defendants. (ECF No. 1-1.)  On April 20, 2015, Defendants Deutsche Bank and Ocwen

removed the action to this Court, arguing that Poore was fraudulently joined and that the Court

should disregard its citizenship for diversity purposes. (ECF No. 1.)  Deutsche Bank and Ocwen

then filed a Motion to Dismiss the Complaint. (ECF No. 4.)  Thereafter, the Jacksons timely

filed the Amended Complaint (ECF No. 8), rendering the first Motion to Dismiss moot. (*See*

ECF No. 10.)  In the Amended Complaint, the Jacksons allege the following counts:

| | |
|---|---|
| Count I: | Defamation against Ocwen for the posting of the Notice of Sale; |
| Count II: | Defamation against Poore for the posting of the Notice of Sale; |
| Count III: | Breach of the Note and the Deed of Trust for scheduling the foreclosure sale when the Jacksons were not in default on the mortgage; for requiring the overpayment when the Jacksons were current; and, for failing to provide a 30-day cure notice, against Deutsche Bank; |
| Count IV: | Breach of Contract by reporting arrearages to credit reporting agencies, against Deutsche Bank; |
| Count V: | Breach of the Implied Duty of Good Faith and Fair Dealing for all of the alleged actions, against Deutsche Bank; and, |
| Count VI: | Declaratory Judgment, against all Defendants. |

In response to the Amended Complaint, Deutsche Bank, Ocwen, and Poore filed their

Motions to Dismiss. (ECF Nos. 11, 13.)  The Jacksons responded to both motions. (ECF

Nos. 15, 17.)  Ocwen and Deutsche Bank filed a reply in support of their Motion to Dismiss.

(ECF No. 16.)  Poore did not file a reply in support of its Motion to Dismiss, and the time to do

so has expired.  The Jacksons also filed their Motion to Remand, arguing that the Court has no

subject matter jurisdiction because complete diversity does not exist. (ECF No. 18.)  Deutsche

Bank and Ocwen responded to the Motion to Remand, and the Jacksons replied. (ECF Nos. 19, 20.) Poore did not respond to the Motion to Remand, and the time to do so has expired.

The matters are ripe for disposition. For the reasons that follow, the Court will deny the Motion to Remand, grant Poore's Motion to Dismiss, and grant in part and deny in part Deutsche Bank and Ocwen's Motion to Dismiss.

### III.  Analysis:  Motion to Remand

The Court will deny the Jacksons' Motion to Remand because Poore has been fraudulently joined and the Court must disregard its citizenship for purposes of subject matter jurisdiction.

### A.     Removal Jurisdiction

Title 28, United States Code § 1441(a)[5] permits a defendant to remove a civil action to a federal district court if the plaintiff could have originally brought the action in federal court. 28 U.S.C. § 1441(a).  Section 1446 delineates the procedure for removal, including the requirement that the defendant file a notice of removal in the district court and the state court. *See generally* 28 U.S.C. § 1446(a), (d).  The state court loses jurisdiction upon the removal of an action to federal court.  28 U.S.C. § 1446(d) ("[T]he State court shall proceed no further unless and until the case is remanded.").

---

[5] Section 1441(a) provides in pertinent part:

> [A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

"The party seeking removal bears the initial burden of establishing federal jurisdiction." *Abraham v. Cracker Barrel Old Country Store, Inc.*, No. 3:11cv182, 2011 WL 1790168, at *1 (E.D. Va. May 9, 2011) (citing *Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir. 1994)). No presumption favoring the existence of federal subject matter jurisdiction exists because federal courts have limited, not general, jurisdiction. *Id.* (citing *Pinkley Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999)). Courts must construe removal jurisdiction strictly. *Id.* (citing *Mulcahey*, 29 F.3d at 151.) "If federal jurisdiction is doubtful, a remand is necessary." *Id.* (quoting *Mulcahey*, 29 F.3d at 151.)

Federal diversity jurisdiction, which the Court examines in this case, requires complete diversity of citizenship. *Id.* at *2 (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990)); *see also* 28 U.S.C. § 1332(a)(1). "[T]he 'citizenship of each plaintiff [must be] diverse from the citizenship of each defendant.'" *Abraham*, 2011 WL 1790168, at *2 (second alteration in original) (quoting *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996)).

**B.     The Fraudulent Joinder Doctrine**

The fraudulent joinder doctrine operates as an exception to the complete diversity requirement, permitting a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, and dismiss the nondiverse defendants, thereby retaining jurisdiction. *Id.* (citing *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999)). "To show fraudulent joinder, the removing party must demonstrate either 'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)). "The party alleging fraudulent joinder

9

bears a heavy burden—it must show that the plaintiff cannot establish a claim even after

resolving all issues of law and fact in the plaintiff's favor." *Id.* "This standard is even more

favorable to the plaintiff than the standard for ruling on a motion to dismiss under [Federal Rule

of Civil Procedure] 12(b)(6)." *Id.* The Court is not bound by the allegations in the pleadings,

but can consider the entire record. *Mayes*, 198 F.3d at 464.

### C. Because the Jacksons Cannot State a Claim for Defamation Against Poore, Poore Is Fraudulently Joined and the Court Disregards its Citizenship

In this case, even resolving all issues of law and fact in the Jacksons' favor, no possibility

exists that the Jacksons would be able to establish a cause of action in state court, under Virginia

law,[6] against Poore. *Hartley*, 187 F.3d at 424. Defendants satisfy the heavy burden required to

establish fraudulent joinder. *Id.* As the Court discusses in Part IV.B, *infra*, the Jacksons cannot

state a claim for defamation against Poore. Accordingly, Poore is fraudulently joined. The

Court will disregard Poore's citizenship for diversity purposes and dismiss it from the case.

### IV. Analysis: Motions to Dismiss

At base, the Jacksons contend that the near-foreclosure was unlawful and against the

terms of the Note and Deed of Trust because they remained current on their payments except for

the improperly returned August 2013 payment. To recover their losses for the alleged failures,

they bring various claims against Deutsche Bank, the owner of the Note; Ocwen, the servicer of

the loan; and, Poore, the substitute trustee.

---

[6] A court exercising diversity jurisdiction applies the substantive law of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938).

A.   **The Court Will Not Dismiss the Action for the Jacksons' Failure to Plead the Affirmative Defense of Notice**

Because notice should be decided at the summary judgment stage, the Court denies the arguments in Deutsche Bank and Ocwen's Motion to Dismiss asserting that the Jacksons' entire action is barred for lack of notice pursuant to Paragraph 22 of the Deed of Trust. Paragraph 22 of the Deed of Trust states, in pertinent part:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party . . . of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

(Deed of Trust ¶ 22.)  If the Jacksons are to prevail on a cause of action arising from the Deed of Trust, they ultimately must show that they complied with this notice provision.  The Amended Complaint does not state whether the Jacksons submitted the appropriate notice.

The lack of notice constitutes an affirmative defense. *Bennett v. Bank of Am., N.A.*, No. 3:12cv34, 2012 WL 1354546, at *5 (E.D. Va. Apr. 18, 2012) (citing *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007)); *accord Townsend v. Fed. Nat'l Mortg. Ass'n*, 923 F. Supp. 2d 828, 832–33 (W.D. Va. 2013); *Giovia v. PHH Mortg. Corp.*, No. 1:13cv577, 2013 WL 6039039, at *5 (E.D. Va. Nov. 13, 2013).  "[A] court may rule on such an affirmative defense at the [Rule] 12(b)(6) stage only 'if all facts necessary to the affirmative defense clearly appear[ ] *on the face of the complaint.*'" *Bennett*, 2012 WL 1354546, at *5 (emphasis and third alteration in original) (citing *Goodman*, 494 F.3d at 464).

Here, the Amended Complaint does not allege whether the Jacksons did or did not provide the notice required in the Deed of Trust prior to bringing this action.  All facts necessary to resolve this affirmative defense do not "clearly appear" on the face of the Amended

11

Complaint.[7]  *Id.*  This Court follows others when concluding that a decision as to notice is "more

properly reserved for consideration on a motion for summary judgment."  *Id.* (quoting *Richmond,*

*Fredericksburg & Potomac R.R. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993)).  Accordingly, the

Court will deny Deutsche Bank and Ocwen's Motion to Dismiss to the extent it relies on a

purported lack of notice.

### B.    The Jacksons Fail to State a Claim for Defamation Because the Alleged Statements Cannot Constitute Actionable Defamation

The Court will dismiss Counts I and II with prejudice because the Jacksons fail to state a

claim for defamation for which relief can be granted against Ocwen and Poore.  The alleged

statements are not actionable as defamation because they do not allege harm to a level that

lowers them in the estimation of the community or deters third parties from interacting with

them.

---

[7] Defendants cite cases they allege conflict with *Giovia, Townsend,* and *Bennett* regarding when a court should decide that notice issue.  *Townsend* itself mentioned some of these cases as holding contrary to its ruling.  *Townsend,* 923 F. Supp. 2d at 833 (citing *Niyaz v. Bank of Am.,* No. 1:10cv796, 2011 WL 63655, at *2 (E.D. Va. Jan. 3, 2011), *aff'd,* 442 F. App'x 838 (4th Cir. 2011) (per curiam)); *Johnson v. Countrywide Home Loans, Inc.,* No. 1:10cv1018, 2010 WL 5138392, at *2 (E.D. Va. Dec. 10, 2010)).  Those cases, however, do not squarely coincide with the circumstances at bar.
First, the court in *Niyaz* ruled on the affirmative defense of lack of notice on a motion for *summary judgment.  Niyaz,* 2011 WL 63655, at *2.  *Johnson,* while on a Rule 12(b)(6) motion to dismiss, specifically relied on a factual finding that no notice had been provided.  *Johnson,* 2010 WL 5138392, at *2 ("[B]ecause Plaintiff did not provide notice in accordance with the Deed of Trust, the Court will grant dismissal.").  Second, other cases that ruled on a motion to dismiss did so by concluding that the facts sufficiently demonstrated a lack of notice.  *See, e.g., Stovall v. SunTrust Mortg., Inc.,* No. RDB-10-2836, 2011 WL 4402680, at *6 (D. Md. Sept. 20, 2011) (rejecting claim that alternate form of notice sufficed when finding that "it is clear that [Plaintiff] did not provide notice in accordance with the Deed of Trust"); *Gerber v. First Horizon Home Loans Corp.,* No. C05-1554P, 2006 WL 581082, at *2 (W.D. Wash. Mar. 8, 2006) (rejecting plaintiff's arguments that compliance with the notice provision would have been a "useless act").  The Court cannot make a factual finding about notice based on the allegations at bar.

1.    **Standard for Pleading Defamation Under Virginia Law**

In Virginia, a plaintiff claiming defamation must allege (1) the publication[8] (2) of an

actionable statement with (3) the requisite intent. *Jordan v. Kollman*, 612 S.E.2d 203, 206

(Va. 2005). An actionable statement "asserts a provably false fact or factual connotation."

*Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1093 (4th Cir. 1993) (applying Virginia law)

(citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990)). "If the statements at issue are

either not defamatory, objectively true, or protected expressions of opinion," no actionable

defamation exists. *Cook, Heyward, Lee, Hopper, & Feehan v. Trump Va. Acquisitions LLC*, No.

3:12cv131, 2012 WL 1898616, at *3 (E.D. Va. May 23, 2012) (citing *Am. Commc'ns Network v.

Williams*, 568 S.E.2d 683, 686 (Va. 2002)); *see also Jordan*, 612 S.E.2d at 206 (noting that an

actionable statement "must be both false and defamatory" and that "[t]rue statements do not

support a cause of action for defamation").

"[T]o be defamatory, a statement must be more than unpleasant or offensive . . . ."

*Hockycko v. Entrodyne Corp.*, No. 6:05cv25, 2005 WL 3132320, at *6 (W.D. Va. Nov. 22,

2005). "Defamatory words 'make the plaintiff appear odious, infamous, or ridiculous.'" *Cutaia

v. Radius Eng'g Int'l, Inc.*, No. 5:11cv77, 2012 WL 525471, at *3 (W.D. Va. Feb. 16, 2012)

(quoting *Chapin*, 993 F.2d at 1092). To assert harm rising to a level that carries a defamatory

sting, a "plaintiff must sufficiently allege that the statement tends to harm his [or her] reputation

'as to lower him [or her] in the estimation of the community or to deter third persons from

associating or dealing with him [or her].'" *Blagogee v. Equity Trs., LLC*, No. 1:10cv13, 2010

---

[8] The Defendants do not dispute the publication of the allegedly defamatory statements. "Publication occurs when an actionable statement is transmitted to some third person so as to be heard and understood by such person." *Suarez v. Loomis Armored US, LLC*, No. 3:10cv690, 2010 WL 5101185, at *2 (E.D. Va. Dec. 7, 2010) (citation omitted) (internal quotation marks omitted).

WL 2933963, at *6 (E.D. Va. July 26, 2010) (quoting *Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F. Supp. 2d 610, 619 (E.D. Va. 2009)). Plaintiff may put forth a defamatory charge expressly or by "inference, implication or insinuation." *Mann v. Heckler & Koch Def., Inc.*, No. 1:08cv611, 2008 WL 4551104, at *8 (E.D. Va. Oct. 7, 2008) (quoting *Hatfill v. N.Y. Times Co.*, 416 F.3d 320, 331 (4th Cir. 2005)). Accordingly, courts should consider both the allegedly defamatory words and the "inferences fairly attributable" to them. *Id.*

The United States Court of Appeals for the Fourth Circuit makes clear that the court must consider the context of an allegedly defamatory statement in determining whether a statement constitutes opinion. *Snyder v. Phelps*, 580 F.3d 206, 219–20 (4th Cir. 2009) (stating that courts must "assess how an objective, reasonable reader would understand a challenged statement by focusing on the plain language of the statement and the context and general tenor of its message") (addressing First Amendment principles in tort claims arising from speech); *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 184 (4th Cir. 1998) (examining in defamation claim the "context and tenor of the [allegedly defamatory] article"). The Supreme Court of Virginia similarly requires an examination of context. *Hyland v. Raytheon Tech. Servs. Co.*, 670 S.E.2d 746, 751 (Va. 2009) ("In determining whether a statement is one of fact or opinion [in a defamation claim], a court may not isolate one portion of the statement at issue from another portion of the statement. Rather, a court must consider the statement as a whole.") (citations omitted). The Court determines as a matter of law whether a statement "is one of fact or one of opinion." *Chaves*, 335 S.E.2d at 102.

14

**2. The Notice of Sale Does Not Support a Claim for Defamation Because the Statements Are Not Sufficiently Defamatory**

The Notice does not support an actionable claim for defamation because, even considering the foreclosure notice in context, the statements it contained and the "inferences fairly attributable" to the words used do not carry a sufficiently defamatory sting. *Mann*, 2008 WL 4551104, at *8. First, the Jacksons' abstract allegations of "public shame and embarrassment," (Am. Compl. ¶¶ 27–28, 35–36), cannot support a finding that the Notice "caused harm to their reputation." *Blagogee*, 2010 WL 2933963, at *6–7 (holding that the plaintiffs' allegations of feeling odious and ridiculous around friends and colleagues and receiving annoying phone calls from debt counseling companies did not set forth sufficient facts to support an actionable claim for defamation). Second, no facts support the Jacksons' vague assertions that because the general public read the Notice, which "carried with it the necessary indication to the general public that they had defaulted on the mortgage," the Notice "necessarily caused damage to the [Jacksons'] reputation." (Am. Compl. ¶¶ 26, 29, 34, 37.) *See Wolf v. Fed. Nat'l Mortg. Ass'n*, 830 F. Supp. 2d 153, 168 (E.D. Va. 2011) (finding that allegations of "embarrassment, public shame, and emotional harm without any supporting facts or contentions" as a result of a foreclosure notice were insufficient to state a claim for actionable defamation).[9] Therefore, the Jacksons do not allege sufficient facts to support a claim for actionable

---

[9] The contrary Northern District of Alabama case cited by the Jacksons does not persuade the Court to depart from the consistent holding of this Court because it applied Alabama law, which "presumes reputational damages" if a statement "'exposes the plaintiff to public ridicule or contempt.'" *Hope v. BSI Fin., Inc.*, No. 5:12cv736, 2012 WL 5379177 (N.D. Ala. Oct. 26, 2012) (quoting *Gary v. Crouch*, 867 So. 2d 310, 316 (Ala. 2003)). The parties do not cite, and the Court does not find, Virginia authority requiring a presumption of reputational damages in an action for simple defamation.

defamation because the Notice does not carry a defamatory sting.  The Court will grant the

Motion to Dismiss Counts I and II with prejudice.

C.   **The Jacksons Have Stated a Claim for Breach of Contract Because They Allege Plausible Facts to Support Each Element of the Claim**

The Jacksons have stated a claim for breach of contract because they "allege facts

sufficient to state all the elements" of the claim, including plausible support for the existence of a

contract, a breach of the contract, and damages stemming from the breach.  *See Bass*, 324 F.3d

at 765 (citations omitted).

1.   **Standard for Breach of Contract Under Virginia Law**

To state a claim for breach of contract under Virginia law, a plaintiff must plausibly

allege: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's

violation or breach of the obligation; and, (3) an injury or harm caused by the defendant's

breach.  *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004).

2.   **The Jacksons Plausibly Allege Each Element to State a Claim for Breach of Contract for the Scheduled Foreclosure and Required Overpayments**

The Jacksons allege plausible facts to state a claim for breach of contract for Deutsche

Bank's scheduling of the foreclosure and requiring the overpayments.  First, no dispute exists

that the Deed of Trust constitutes a contract between the Jacksons and Deutsche Bank.  *See*

*Jones v. Fulton Bank, N.A.*, 565 F. App'x 251, 252 (4th Cir. 2014) (citation omitted).  Second,

the Jacksons aver that Deutsche Bank breached the terms of the Deed of Trust when it failed to

accept what the Jacksons clearly allege was a full payment in August 2013 and when it

scheduled a foreclosure despite the Jacksons' current payment status.[10]  (Am. Compl. ¶ 46.)

---

[10] Deutsche Bank's contentions that the Jacksons "provide no factual support for their assertion that they were current on the [mortgage loan] other than repeatedly proclaiming it to be

16

Third, the Jacksons plausibly claim that they incurred damages as a result of Deutsche Bank's breaches by scheduling the foreclosure and requiring the overpayment, including a specific, otherwise-unnecessary payment of over $17,000.[11] (Am. Compl. ¶¶ 47–51.) To the extent the Jacksons allege a breach of contract stemming from a lack of 30-day notice under Paragraph 22 of the Deed of Trust, however, the claim fails. No foreclosure took place. The Jacksons can claim no damages from the lack of notice. *See Jones*, 565 F. App'x at 252.

Thus, the Court will grant Deutsche Bank and Ocwen's Motion to Dismiss Count III of the Amended Complaint to the extent it relies upon a breach of lack of the 30-day cure notice and will deny the motion to dismiss Count III as to breaches for scheduling the foreclosure and requiring the overpayment.

---

true" misunderstand the standard by which the Court reviews the Amended Complaint on a Rule 12(b)(6) motion. (*See* Deutsche Bank, Ocwen Mem. Supp. Mot. Dismiss 11, ECF No. 12.) At this stage, the Court must accept as true the Jacksons' plausible factual assertions, such as their allegation that they have always been current on their payments and that Deutsche Bank therefore had no right under the Deed of Trust to demand overpayments or schedule a foreclosure. *Matkari*, 7 F.3d at 1134.

[11] Deutsche Bank's arguments that the Jacksons do not sufficiently allege damages as to the overpayment breach once again misstate the standard at the Rule 12(b)(6) stage. (*See* Deutsche Bank, Ocwen Mem. Supp. Mot. Dismiss 11–12.) The Jacksons clearly point to specific damages incurred as a result of Deutsche Bank's breaches, including the overpayment of more than $17,000. (Am. Compl. ¶ 47–51.) At this stage, the Court assumes those plausibly articulated damages to be factually true. *Matkari*, 7 F.3d at 1134; *see Bourdelais v. JPMorgan Chase Bank, N.A.*, No. 3:10cv670, 2012 WL 5404084, at *10 (E.D. Va. Nov. 5, 2012)

The Amended Complaint alleges that some new payment terms were negotiated over the telephone. The Jacksons do not seem to premise their breach of contract claim on any oral modification, despite Deutsch Bank's suggestions otherwise. (Deutsche Bank, Ocwen Mem. Supp. Mot. Dismiss 12.) Instead, the Jacksons contend that that the verbal statements by an Ocwen representative put them on notice of the foreclosure and guided them through the process to stop the sale. (Am. Compl. ¶¶ 45–46.)

While black letter law states that the Deed of Trust could not be modified based on any oral communications, the Court does not confront a circumstance where such a finding need be made. *McInnis v. BAC Home Loan Servicing, Inc.*, No. 2:11cv468, 2011 WL 383590, at *8 n.5 (E.D. Va. Jan. 13, 2012) ("To the extent Plaintiff [alleges that] a verbal contract to permanently

**D.      The Jacksons' Count IV Breach of Contract Claim Is Not Preempted by FCRA Because It Is a Common Law Claim Not for Defamation, Invasion of Privacy, or Negligence**

The Court will deny Deutsche Bank and Ocwen's Motion to Dismiss Count IV of the

Amended Complaint because the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*,

does not preempt the Jacksons' breach of contract claim against Deutsche Bank. Ocwen and

Deutsche Bank seek a contrary resolution but do so asking this Court to follow non-binding

decisions from the United States Courts of Appeals for the Second and Seventh Circuits without

attempting to explain why this Court should ignore myriad district court decisions in the Fourth

Circuit finding that preemption should not occur. Ocwen and Deutsche Bank's position does not

persuade.

**1.      Applicable Law:  FCRA Preemption**

"The FCRA is a comprehensive statutory scheme designed to regulate the consumer

reporting industry." *Ross v. FDIC*, 625 F.3d 808, 812 (4th Cir. 2010). "The FCRA creates a

duty for furnishers of credit information to provide accurate information, including a duty to

correct inaccuracies and to investigate disputed information upon notice from a credit reporting

agency [("CRA")]." *White v. Green Tree Servicing*, 118 F. Supp. 3d 867, 871 (D. Md. 2011)

(citing 15 U.S.C. § 1681s-2); *see Ross*, 625 F.3d at 813. As first passed in 1970, the FCRA

contained a limited preemption provision in Section 1681h(e), which allowed for certain state

common law claims to proceed despite FCRA's effect on consumer law. *White*, 118 F. Supp. 3d

at 871. It provides, in pertinent part:

> Except as provided in sections 1681n and 1681o of this title, no consumer may
> bring any action or proceeding in the nature of defamation, invasion of privacy, or
> negligence with respect to the reporting of information against any consumer

modify her loan exists, such a contract would be barred in Virginia by the statute of frauds.")
(citations omitted).

18

reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e).

When Congress enacted FCRA, the law "generally permitted state regulation of the consumer reporting industry," which resulted in some disparities among reporting laws from state to state. *Ross*, 625 F.3d at 812; *Evans v. Trans Union LLC*, No. 2:10cv945, 2011 WL 672061, at *3 (S.D. W. Va. Feb. 14, 2011). In 1996, Congress amended FCRA to countermand the patchwork of laws passed by states. *Ross*, 625 F.3d at 812–13. Included in the 1996 amendments was a "general preemption provision, 'both by its terms and its given moniker,' which is 'General exceptions.'" *Jeffery v. Trans Union, LLC*, 273 F. Supp. 2d 725, 727 (E.D. Va. 2003) (citations omitted) (noting that under statutory construction principles, a general statute "must yield" to a coexisting specific statute on the same subject matter). The broad preemption statute in Section 1681t(b)(1)(F) states, in pertinent part:

**(b) General exceptions**

No requirement or prohibition may be imposed under the laws of any State--

(1) with respect to any subject matter regulated under--

(F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies,

15 U.S.C. § 1681t(b)(1)(F). No dispute exists that Section 1681t(b)(1)(F) squarely preempts state *statutes* that concern the "responsibilities of persons who furnish information to consumer reporting agencies." *Ross*, 625 F.3d at 813 (citing 15 U.S.C. § 1681t(b)(1)(F)).

However, since its enactment, courts have noted an apparent conflict between the broad preemption enacted in Section 1681t(b)(1)(F) and the more limited so-called "malice" preemption provision in Section 1681h(e). *Id.* at 814 n.*; *see White*, 118 F. Supp. 3d at 872. For example, if the sweeping language in Section 1681t(b)(1)(F)—"no requirement or prohibition may be imposed under the laws of any State"—preempts all state statutory *and* common law claims, it would also preempt a litigant's claim for defamation with malice, even though Section 1681h(e) expressly exempts such a claim from FCRA's preemptive effect.

To reconcile any inconsistency, the vast majority of the district courts within the Fourth Circuit, including this Court on multiple occasions, has employed the so-called "statutory approach" to interpret claims of preemption before them.[12] Under this approach, courts conclude that Section 1681h(e), which speaks to "only certain types of common laws," preempts just those narrow state common law claims, while Section 1681t(b)(1)(F), which directly addresses "state laws," bars only state statutory claims. *Bourdelais*, 2012 WL 5404084, at *7 (quoting *Evans*, 2011 WL 672061, at *4); *Hazaimeh v. U.S. Bank Nat'l Ass'n*, 94 F. Supp. 3d 741, 753 (E.D. Va. 2015). Courts so ruling note that this reading follows a proper statutory construct by assuring that Section 1681t(b)(1)(F) does not render Section 1681h(e)—an existing provision when Congress passed Section 1681t(b)(1)(F)—superfluous. *See, e.g., White*, 118 F. Supp. 3d at 872 (citing cases); *Bourdelais*, 2012 WL 5404084, at *7 (citing cases).

The Fourth Circuit has not addressed the conflict. *Hazaimeh*, 94 F. Supp. 3d at 753. Other circuits have evaluated the preemptive interrelation of the two FCRA provisions and, in

---

[12] The *Misel* case from the Middle District of North Carolina cited by Deutsche Bank and Ocwen does not persuade this Court to forsake the statutory approach. *Misel v. Green Tree Servicing, LLC*, 782 F. Supp. 2d 171 (M.D.N.C. 2011). *Misel* differs factually. In part because the complaint in *Misel* did not allege that the defendant was a CRA, the court did not address the

non-binding decisions, have found the statutory approach unpersuasive.[13]  This Court concurs

with one district judge who decided that, "[c]onsidering the unsettled state of the applicable law"

and the well-reasoned opinions of "most district judges in the Fourth Circuit [that apply the

statutory approach], it makes sense to follow [the] rule that [S]ection 1681t(b) preempts only

state statutes, whereas [S]ection 1681h(e) preempts state common law." *Alston v. Wells Fargo*

*Bank, N.A.*, No. 8:12cv3671, 2013 WL 990416, at *6 (D. Md. Mar. 12, 2013).

### 2.    FCRA Does Not Preempt the Jacksons' Claim for Breach of Contract Because Neither Section 1681t(b)(1)(F) Nor Section 1681h(e) Applies

Following the well-reasoned statutory approach adopted by this Court, FCRA does not

preempt the Jacksons' claim for breach of contract in Count IV because neither Section

1681t(b)(1)(F) nor Section 1681h(e) applies to the claim.  First, Section 1681t(b)(1)(F) does not

preempt the Jacksons' common law breach of contract claims because it only preempts state

statutory law.  *Hazaimeh*, 94 F. Supp. 3d at 753.  Second, Section 1681h(e) does not preempt the

Jacksons' breach of contract claim because it "do[es] not relate to defamation, invasion of

privacy, or negligence."  *Id.* (citing 15 U.S.C. § 1681h(e)).  Thus, FCRA does not preempt the

---

statutory approach and did not reach a conclusion regarding a conflict between Section 1681h(e)
and (b)(1)(F).  782 F. Supp. 2d at 177.

[13] Two circuit courts of appeals have declined to employ the statutory approach,
concluding instead that no conflict between the preemption provisions exists because "[s]ection
1681h(e) preempts *some* state claims that could arise out of reports to credit agencies;
§ 1681t(b)(1)(F) [simply] preempts *more* of those claims."  *Macpherson v. JPMorgan Chase
Bank, N.A.*, 665 F.3d 45, 47–48 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 2113 (2012); *Purcell v.
Bank of Am.*, 659 F.3d 622, 625 (7th Cir. 2011); *Premium Mortg. Corp. v. Equifax, Inc.*, 583
F.3d 103, 106–07 (2d Cir. 2009). Without citation, both *Macpherson* and *Purcell* suggest that
this broad preemptive reading comports with a congressional intent to steer supervision of claims
about furnishers providing false reports to CRAs away from litigation and toward administrative
agencies. *Macpherson*, 665 F.3d at 48 (quoting *Purcell*, 659 F.3d at 626); *Purcell*, 659 F.3d
at 626. Deutsche Bank and Ocwen fail to argue why this Court should adopt these out-of-circuit
rulings over several thoughtful decisions within this very district.

Jacksons' common law claim for breach of contract. The Court will deny Deutsche Bank and Ocwen's Motion to Dismiss Count IV of the Amended Complaint.

**E. The Jacksons Do Not Plausibly Allege a Breach of the Implied Covenant of Good Faith and Fair Dealing Because It Cannot Exist as a Separate Tort Claim**

The Court will grant Deutsche Bank and Ocwen's Motion to Dismiss Count V of the Amended Complaint, the Jacksons' claim for breach of an implied covenant of good faith and fair duty, because it cannot exist as a separate tort claim.

**1. Standard to Evaluate a Breach of the Implied Covenant of Good Faith and Fair Dealing Under Virginia Law**

Contracts governed by Virginia law, including those governing mortgages such as a deed of trust, contain an implied covenant of good faith and fair dealing. *Covarrubias v. CitiMortgage, Inc.*, No. 3:14cv157, 2014 WL 6968035, at *3 (E.D. Va. Dec. 8, 2014) (citing *Va. Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 541–42 (4th Cir. 1998)), *aff'd in part, rev'd in part*, 623 F. App'x 592 (4th Cir. 2015). To prove a breach of the implied covenant of good faith and fair dealing under Virginia law, a plaintiff must establish "(1) a contractual relationship between the parties, and (2) a breach of the implied covenant." *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450 (E.D. Va. 2009); *Bourdelais*, 2012 WL 5404084, at *4. While breach of this duty does not constitute an independent tort, the failure to act in compliance with this duty can support a breach of contract claim. *Charles E. Brauer Co.*, 466 S.E.2d at 385.

**2. No Breach Exists in This Case Because the Jacksons Pled the Claim as a Separate Tort Claim**

The Jacksons cannot plead, as they have here, a breach of an implied covenant of good faith and fair dealing as an independent tort. A claim for breach of this implied covenant can

support a breach of contract claim. *Charles E. Brauer Co.*, 466 S.E.2d at 385. However, such a claim cannot be "pled as a separate tort claim." *Jones*, 565 F. App'x at 253.

The Jacksons wrongly attempt to plead a separate tort cause of action for breach of the implied covenant of good faith and fair dealing.[14] Such an improper pleading supports dismissal of Count V. *Jones*, 565 F. App'x at 253; *Smith v. Flagstar Bank, F.S.B.*, No. 3:14cv741, 2015 WL 1221271, at *6 (E.D. Va. Mar. 17, 2015) ("Plaintiff has attempted to assert a separate cause of action for breach of the implied duty of good faith, and thus he has not stated a claim upon which relief may be granted under Virginia law."). Accordingly, the Court will grant Deutsche Bank and Ocwen's Motion to Dismiss Count V of the Amended Complaint.

**F.     The Jacksons' Declaratory Judgment Claim Seeks No Relief Independent of Their Other Claims**

The Court will grant Ocwen's Motion to Dismiss Count VI of the Amended Complaint because declaratory relief serves no useful purpose in these circumstances: the Amended Complaint contains substantive claims that address the same conduct as the request for declaratory relief.

**1.     Standard for Declaratory Judgment**

"[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). The Declaratory Judgment Act expressly states that district courts "may declare the rights and other

---

[14] The Jacksons do not couch their claim as a breach of contract. The Jacksons mention the Deed of Trust and the Note in Count V, but they do not link any of the alleged breaches of the implied covenant of good faith and fair dealing to any provision in the contracts. Without pleading a specific breach, the Jacksons have not "allege[d] facts sufficient to state all the elements" of a breach of contract claim in Count V. *See Bass*, 324 F.3d at 765 (citations omitted).

legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). In light of this "nonobligatory" language, the Supreme Court has explained that "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton,* 515 U.S. at 288.

A district court may decline to entertain a declaratory judgment claim when it has "good reason" to do so. *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.,* 386 F.3d 581, 594 (4th Cir. 2004). In determining whether to exercise declaratory jurisdiction, this Court must consider whether declaratory relief would "serve a useful purpose in clarifying and settling the legal relations in issue," and whether the judgment would "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* (citation omitted). Because the requested declaratory judgment serves neither of these objectives, the Court will dismiss Count VI of the Amended Complaint.

"[C]ourts have repeatedly recognized that [a] declaratory judgment serves no useful purpose when it seeks only to adjudicate . . . already existing claim[s]." *Metra Indus.,* 2014 WL 652253, at *2 (second alteration in original) (citing cases); *see Seneca Ins. Co. v. Shipping Boxes I, LLC,* 30 F. Supp. 3d 506, 511–512 (E.D. Va. 2014) (citations omitted); *Newton v. State Farm Fire & Cas. Co.,* 138 F.R.D. 76, 79–80 (E.D. Va. 1991) (dismissing declaratory judgment claim brought by insured against insurer because the declaratory judgment would serve no useful purpose in clarifying the contractual issues before the court).

### 2.   The Declaratory Judgment Requests Serve No Useful Purpose Because They Seek Only to Adjudicate Already Existing Claims

The Court will grant Deutsche Bank and Ocwen's Motion to Dismiss Count VI of the Amended Complaint because its allegations mirror those in the Jacksons' other claims. In Count

VI, the Jacksons seek a declaration that they are current on their payments, that they have overpaid, and that they received no cure notice. (Am. Compl. ¶¶ 63–67.) They seek relief based on similar allegations in their breach of contract claim in Count III. (Am. Compl. ¶ 43.)

Here, the "same conduct underlies [the Jacksons'] claims for declaratory judgment and breach of contract." *Metra Indus.*, 2014 WL 652253, at *2. "Because the declaratory judgment claim 'seeks the resolution of legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action,'" the claim for declaratory relief is duplicative and permitting it to proceed will not serve a useful purpose. *Metra Indus.*, 2014 WL 652253, at *2 (citation omitted). Thus, Count VI of the Amended Complaint fails to state a proper claim for declaratory relief. The Court will grant Deutsche Bank and Ocwen's Motion to Dismiss Count VI of the Amended Complaint.

## V. Conclusion

For the foregoing reasons, the Court will grant in part and deny in part Deutsche Bank and Ocwen's Motion to Dismiss; grant Poore's Motion to Dismiss; and, deny the Jacksons' Motion to Remand. An appropriate Order shall issue.

/s/

M. Hannah Lauck
United States District Judge

Date: 3-31-16
Richmond, Virginia